S.T. Bernard Parish Government v. United States S.T. Bernard Parish Government v. United States 2018-12-04 Mr. McGooey, is it? Yes, Your Honor. When you are ready. May it please the Court. Your Honors, the issue here is that the lower court erred in finding that the cooperative agreement between the United States, NRCS, and S.T. Bernard Parish Government was not an enforceable contract that allowed for money damages. Let me ask you a question at the outset to make sure I understand the rules of the game that we're playing. Is it your view that this agreement was a cooperative agreement under Section 6305 of Title 31? In its terms, it is under that section, but it's also a procurement contract. And that section that you cite, Judge Bryson, doesn't say anything about a cooperative endeavor agreement not being enforceable. It just uses that as the format to enter into these type of agreements. But there is law that says if an agreement satisfies the requirements of a cooperative agreement, as opposed to a procurement contract, which is, I think, 6304, then it is not an agreement that can support a claim for money damages. I believe the statutes in the cases say that where a cooperative endeavor agreement format is used for the procurement of services, it is then a binding enforceable contract because it is a contract for procurement of services. Well, then it doesn't satisfy the requirement of a cooperative agreement. It's not a cooperative agreement. It's a cooperative agreement. It has a long title on it. In name only. Right. If it walks like a duck and quacks like a duck, it's a duck. And this walks and talks like a procurement contract because S.T. Bernard was obligated to do a service. That was going to be my next question. That's going to be my next question, which is, what is it about this agreement that doesn't fit hand in glove with the cooperative agreement statute? Because the cooperative agreement statute says that something where the United States government is giving money to a state or local government, Jack, for the principal purpose of the relationship is to transfer a thing of value to the state, money, to carry out a public purpose of support or stimulation authorized by a law of the United States. The purpose, I take it, was, as indicated in the agreement itself, to deal with the problems which were laid out in Section 216 of the Public Law 516 back in 1950 as amended, which was to provide funds for emergency measures for runoff retardation and soil erosion prevention, which is exactly what this arrangement was directed to. Why doesn't that satisfy all the requirements of a cooperative agreement? Because it satisfies the requirements for the procurement of something that gives a benefit to the United States government. So do you agree that with the government's contention that benefits to the federal government must be direct? There's case law that says direct benefit, but there's also case law from this circuit, the Kemon case, which Judge Bryson was on the panel in, that does make no requirement for direct benefit. Well, what constitutes a direct benefit? And that's an interesting question. Thank you. It's a direct benefit. I'll give you an example, a simple example. A contractor's building a house on a property that he's purchased. There's a property before that, when you drive up, has ugly stuff in the backyard. So he contracts with the owner of that property, it's not his property, to build a six-foot nice-looking fence that's going to hide all the ugly debris. And he says, you hire a fence guy to do it, you give me reasonable receipts not to exceed this amount, and I'll reimburse you for it and I'll pay for it. Well, someone might argue, there's no direct benefit to that contractor. The fence isn't on his property, so there's no direct benefit. But what he wants— Counsel, there's a hold harmless clause in this agreement. Yes. Doesn't that work against you? I don't think so, Your Honor, and the Supreme Court cases that are applicable say that when you're interpreting federal contracts, you use the same type of contract interpretation as you do in private contracts. And the rules of interpretation are that you—and I cite this in my brief— in looking at a contract, you do not read out any clause, you interpret it as a whole to make the whole contract enforceable, and you don't interpret it as such to make a clause be of no use. Against whom would you be holding the government harmless? You aren't sued by the contractor, were you? No. And the whole harmless clause says that St. Bernard will hold the government harmless for the obligations of the sponsor, St. Bernard. So we would hold them harmless if we did something wrong, or for the performance of the work. Well, you can't interpret, if you buy my argument, that this was a contract that they had to reimburse us. We don't hold them harmless from the reimbursement obligation. That would make no sense. It would also make a nullity. Correct. That part of the whole harmless for performance of the work is, for example, if the contractor damaged neighboring properties, if there was a personal injury thing, then we would hold the NCRS harmless from the liability arising from the work. But we don't hold them harmless from the obligations that they contracted to in the agreement. That would make no sense. And so, therefore, the trial court's conclusion to that is contrary to the law and the general rules of contract construction. Mr. McGaughy, as I understand, the structure of the statutes under Title 31 here that we're dealing with is this one is a procurement contract, two is a grant, and three is this cooperative agreement. Suppose that instead of reading cooperative agreement at the top of this agreement, it simply said grant. And the federal government had told the parish that it was going to grant whatever it is, a couple of million dollars for the parish to do this reconstruction work, which is a public purpose. Would you think that that constituted a binding contract on the federal government? If you can call it a grant, but where it requires St. Bernard government to procure services to the tune of $3.2 million, I would say that that's a binding contract. You mean if St. Bernard were to do the work itself with its own employees, it would not be a binding contract, but as soon as it has to go out and get a subcontractor it is? Well, if the government is, if we are procuring services for the United States government, it's binding. Well, the for the United States government, of course, is the question. Right. This is, if it's a grant, suppose the United States just says, you know what, this county, this parish needs help. They've had a disaster. Let's help them out. We'll give them a couple of million dollars to try to fix up the biome. That's not a contract, is it? Well, let me interject on that question, too, because supposing the government says to you, we've given you a grant of $3 million, and you go out and spend the money, either directly or by contracting, and the government says, we were just kidding. Do you have an implied-in-fact contract? I think so, and the Texas case that I sought in, in my opinion, which was like a FEMA reimbursement to Texas for emergency relief. In that case, the court held that that is a binding contract and can be enforced. That would be a promissory estoppel, would it not? I don't know if it's promissory estoppel, but it is certainly. That sounds like a contract that's implied in law, not implied in fact. Perhaps. And if it is, then the Court of Federal Claims has no jurisdiction over it. That's right. The Court of Federal Claims only has jurisdiction over a contract implied or express. And we contend this is an express contract. Right. So if it's an express contract, the idea is that the federal government gives the money to the parish. The parish then either does the work itself or gets somebody to do it. You say if they happen to get somebody to do it, then it's a contract binding on the United States? Because as long as St. Bernard provides something of value to the government, To the government or just to the public in general? Well, think about it. What does the government do? It doesn't make money. It provides services to its citizens. But then you've, I think, read cooperative agreements out of the statute because the cooperative agreements require, in order to be a cooperative agreement, that there be a public purpose for the expenditure of money. And your argument, as I am understanding it, would mean that that would convert a cooperative agreement, indeed every cooperative agreement, into a contract. Why not? Well, I'll give you, the Keymon case dealt with that. Well, let me, Keymon, keep in mind. Because that was a cooperative agreement. Keep in mind, in Keymon, there was a $15,000 payment to the government from the plaintiff in that case. And if there's any consideration at issue, that certainly satisfies it, it seems to me. Well, it was only a $15,000 payment. But what the court said was, it said that the benefit to the United States was the fact that there was a shortage of bovine serum. And this was for a Keymon, a private corporation. And the court said that there was valid consideration because it was a benefit to the United States to enhance importation of bovine serum. And it specifically recognized that the United States was not buying the serum and was not getting anything of money other than the $15,000 to reimburse some of the cost for putting an inspector at the private plant. Which certainly constitutes consideration. Right. I believe it does. So that, in any event, Keymon was a non-precedential opinion, right? It is procuring. Well, and beyond just being procuring, it was designated as non-precedential. So it's not binding. But its logic and its rationale is applicable here. The other thing I wanted to say is, is in the Tucker Act, in the Anchorage case, there's this provision that says in a contract money damages are presumed and the government has to rebut it. And in this contract, there's a termination clause that says upon termination, the NRC's payments will be made in accordance with the NRC's liabilities. Well, liabilities is money damage. This is clearly a contract that embodies money damage with enforceable consideration. And so therefore, it should be upheld. I'll use the rest of my time. We will save it for you. Ms. Bezek. Good morning. Good morning. May it please the court. Do you agree that offer acceptance and the authority of the signing government official are not at issue? They certainly have not been argued in this particular appeal and were not part of the lower court's opinion. That's a housecleaning question. Certainly, Your Honor. Would St. Bernard have paid out money to Omni absent your promise to reimburse it? That is unclear from this record, Your Honor. The assistance agreements under this particular program are certainly something that the local government applies to, seeking assistance from the federal government for whatever particular improvements that they need to make. Is the government arguing that a cooperative agreement cannot be a valid contract? No, Your Honor. We recognize this court's discussion in trauma services that any agreement could potentially be a contract within the jurisdiction of the Tucker Act if it meets the requirements of a contract. The statute underpinning the emergency watershed protection program makes flood destruction a matter of quote national welfare and improvements to watersheds a matter of general welfare. It also says flood control is a quote proper activity of the federal government. Isn't fulfilling a statutory mandate a benefit for the government for the purposes of consideration? No, Your Honor. Not for purposes of consideration. And frankly, if it were, that would render effectively every action of the federal government consideration worthy of the term consideration under a contract scheme. There is no way. I'll get to that. The government did in fact pay some money to St. Bernard for work done. Yes, Your Honor. So did the government pay out U.S. government funds for which it received no benefit? Before you answer, keep in mind the Anti-Deficiency Act and other federal crimes. Yes, Your Honor. I don't think there is a question that we would dispute that the cooperative agreement in this case and the activities that were done pursuant to it by the parish were certainly authorized and That's not my question. Were they a benefit? Frankly, Your Honor, I don't know that they were. My question was, did the government pay out funds for which it received no benefit? In the context of a consideration analysis, the government did not receive consideration for this particular action in the contract interpretation realm. So you're not going to answer my question? Well, Your Honor, I'm trying to answer your question. Is the answer that it was paid out under a cooperative agreement? I don't believe it's that circular, Your Honor. Well, a cooperative agreement requires that there be a public purpose. Certainly, Your Honor. But it doesn't limit the public purpose, I take it, to something that is of direct benefit to the government. No, Your Honor. And as you pointed out in the EWP statute and regulations, those regulations describe the public benefit of ensuring recovery from flood damage, ensuring the prevention of potential future loss to life, loss to property of the citizens of the United States and their property. And that is certainly the effect of what was undertaken here. So it benefits the people rather than directly the government? That's certainly one way to look at it, Your Honor, the people and the land contained within the United States. Why does the direct language apply to all government contracts? Because you make that argument, 6303 argument. I'm sorry, could you repeat that question? You argue that a benefit to the government has to be direct to be proper consideration, right? Yes, Your Honor. By my reading, any direct language is only applied to the statute governing procurement contracts specifically, not government contracts generally. That's in 6303. Why does the direct language apply to all government contracts? I think I understand the question, Your Honor. I'm certainly not referring to a particular statute with that language, but trying to, as the court below here did, find a logical distinction between what constitutes consideration for contract purposes and what is simply this generalized public good that comes from the government undertaking its statutory intention. And in this case, I think the language, and frankly I think you'll find it both in procurement contracts as well as in third-party beneficiary discussions, the distinction between a direct benefit and an incidental benefit is logical here in the context of determining when there is consideration for a particular contract. The government cites two of our opinions for the proposition that cooperative agreements, unlike procurement agreements, are not presumed to provide monetary relief, and that's Ricks, Mushroom, and Holmes v. United States. Yes, Your Honor. Where in the cases did we make such a holding? Your Honor, that derives from first the finding in Holmes that just because any particular agreement could be a contract, there are certainly particular instruments that don't necessarily require this presumption of money damages or a monetary questionnaire. Go ahead. In Ricks, Mushroom, Your Honor, this court was looking at cooperative agreements. There is clearly the instance, as in there, where a cooperative agreement could certainly be well outside the realm of money. And so in this case where we have a finding by the court that this is, in fact, a cooperative agreement. Rocky Mountain Helium clearly cabins off Ricks, Mushroom. In which sense, Your Honor? It cites Ricks, Mushroom as a highly specific circumstance overcoming the presumption, quote, where a special government cost-sharing agreement elipses. Was it issued? Yes, Your Honor. And frankly, again, we have a cost-sharing agreement here. And again, this is not an analysis. The fact that this is a cooperative agreement doesn't end the question. We're certainly not arguing that because this is a cooperative agreement, therefore it can't be a contract within the jurisdiction of the court. Well, to be more precise, you mean just because it's entitled a cooperative agreement. I mean, if it is a cooperative agreement, that means it has satisfied the statute. And the statute requires a variety of things, including that it not be something that is for the direct benefit or use of the United States government. So if it turns out that it is for the direct benefit of the United States government, then it isn't a cooperative agreement regardless of what it has on the title. Certainly, Your Honor. And I understand that the parish here is arguing that this falls outside of the statutory definition of a cooperative agreement. As we've argued, we don't believe that's the case. This is a quintessential cooperative agreement in essence. It clearly transfers a thing of value to a state or local government. The agreement specifically pertains to the government's promise to monetarily reimburse St. Bernard Parish. What other remedies for breach does the agreement provide other than money damages? Well, Your Honor, we would argue that it does not provide remedies for breach. Does the agreement specifically disavow money damages? Your Honor, we have noted the provision where the parish specifically agreed to hold and save the NRCS free from any and all claims. Including a lawsuit by itself? Do you think that's a reasonable implication? Your Honor, frankly, the plain language of that particular clause within this agreement appears to encompass a claim just like this. Has the government ever made that claim and had it sustained by a court? Frankly, I don't know the answer to that, Your Honor. I certainly haven't been able to find identical language to this that has been considered. But the trial court, in looking at this question of damages, was taking this picture as a whole. In considering that this is a cooperative agreement and that we therefore have to find within this agreement itself where the parish is entitled to money damages. One of the arguments you make is that the agreement makes reimbursement by the government contingent on appropriation. Did Congress fail to appropriate the funds? No, Your Honor. And I don't know that we made that particular argument. Our argument was more that the agreement makes reimbursement contingent upon... I'm struggling for the word. But the NRCS reviews the various submissions that come in through the parish. Let me read to you. Of course, Your Honor. Similarly, the agreement states both parties understanding that the furnishing of financial and other assistance by NRCS is contingent on the availability of funds appropriated by Congress, from which payment may be made and shall not obligate NRCS upon failure of Congress to appropriate funds. Yes, Your Honor. And I apologize for forgetting that we did put that in there. Where I thought you were going, no, to answer your question again, there was no failure to appropriate, as certainly has been alleged here. The other element of the contingent nature of this agreement was that the NRCS has to approve the reimbursement requests that come in from the parish. And not only is it unclear at best from this agreement under what circumstances that approval must be given, if it must be given at all, but that itself presents the contingency that suggests that this is not a two-way obligation. Where is the approval provision? Your Honor, that is at, I believe it's appendix 27. And I'm looking at paragraph 5. There are multiple numbers near the upper half of the page. Paragraph 5? I don't see anything about approval there. Your Honor, yes. The word approval is on the second line of paragraph 5. Oh, I see it. There is. You're right. Upon receipt and approval. Yeah, there we go. Right. OK. All right. Anything further? No, Your Honor, unless there are any further questions from the court. Thank you, Ms. Pizzo. Thank you. Mr. McGooley has some rebuttal time, almost three minutes. Yes, Your Honor, and I'd like to start off the brief rebuttal time with that particular point. The contract says that the NRCS will make payment upon receipt and approval. But it's not unfettered approval. It's no more different than an employment contract where someone has a contract to be paid, plus expenses, reasonable expenses. Well, obviously, if the guy submits expenses that are exorbitant and crazy, within the terms of the contract, the employer could disavow them. But that doesn't make it totally within the discretion of the employer. St. Bernard had to submit reasonable expenses, and in the contract, on APPX 26, there's a provision that cites all the various regulations that provide for the reasonable costs. Did the government refuse approval? Yes, they did. They approved payment except for $400,000, and if this case gets remanded, there's a dispute about whether or not that $400,000 was adequate. Did they articulate a reason? Only that they wanted more information, and as a practical matter, St. Bernard sent additional information to justify within all of those regulations. And then they kept asking for more and more information, and at some point, St. Bernard said, we have to try and get this resolved. And so we filed our action because we believe that we did provide adequate support, but that would have to be dealt with below because it's a factual issue that hasn't been reached yet. But the point is, just because they have approval doesn't mean it's just willy-nilly. It is a binding contract for once St. Bernard supports the documentation as required by those regulations, then it's to be paid. The agreement says will be paid. Well, apparently what you're saying is the government never took the position that if they received sufficient information, that they weren't bound to pay you. That's correct. They have never taken that position. The other point I wanted to make is on the benefit issue. Well, they never took the position, I take it, that if they received adequate information, they would pay it. I doubt that they ever said anything about being bound to pay it. That's correct. They said basically, if you submit the documentation, you'll pay me. If we're happy, we pay. That's very different from saying if we're happy, then we recognize that we're bound to pay. They didn't expressly say that, but all of the correspondence, if you read through it, when we get to that point in this litigation, it's clear that it was a definite obligation for them to pay if we sent in the Form 277 with appropriate documentation. And, Your Honor, in this case, however you view the laws on this, I think they align up with our position. But how can the federal government require a local entity to spend $3.2 million, sign a written contract of reimbursement, and then just say the contract isn't worth the paper it's written on? That makes no logic sense in law. But if this were a grant, you would agree that there would be no binding obligation? There is some argument that even a grant should be enforced, and that's the law review article I have cited. But I haven't cited a case that says that. And that's a whole argument that goes beyond a situation where the United States government did get a benefit. Thank you, Your Honors. I appreciate your attention. Thank you, counsel. We'll take the case under advisement.